[No. B197896. Second Dist., Div. Two. Jan. 23, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY DAVIDSON, Defendant and Appellant.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

## COUNSEL

Susan K. Keiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Keith H. Borjon and Sharlene A. Honnaka, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ASHMANN-GERST, J.**—Larry Davidson, also known as Larry Davison, appeals from an order reinstating a dismissed judgment convicting him of attempted murder (Pen. Code, §§ 664, 187, subd. (a)).[1] The order was issued after the victim died, defendant was convicted of his murder, Division One of this court reversed that conviction and the murder charges were dismissed because the People were unable to proceed with a retrial. Defendant contends that the attempted murder judgment must be reversed because the trial court lacked authority to reinstate a previously dismissed judgment, and, by doing so, subjected defendant to double jeopardy.

We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

On July 19, 2000, defendant, his brother, Shawn Davidson (Shawn), and their cousin, Brian Johnson (Johnson) were outside of Johnson's residence.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] We take the facts from our opinion in *People v. Davidson* (July 17, 2002, B147565) (nonpub. opn.) (*Davidson I*).

The three men were associated with subsets of the Crips gang. At some point, Quorne Warren (Warren) walked past them dressed in red. Defendant and his associates believed Warren was a member of the rival Bloods street gang. When Warren saw them staring at him, he asked, "What's up, dog?," and someone responded, "What's up?" Warren walked away without incident.

Shawn and defendant then discussed walking in rival gang territory flashing rival gang colors. They speculated that if they did that in Bloods territory, they would not get a "free pass." Defendant then ran after Warren. As Warren reached the street corner, defendant fired two shots, hitting him in the back of his head, paralyzing him. Warren later died from his injuries.

In the first trial related to this incident, initiated before Warren died, a jury convicted defendant, in superior court case No. MA020910 (MA020910), of willful, deliberate and premeditated attempted murder. It found to be true the firearm use allegations within the meaning of section 12022.53, subdivisions (b), (c) and (d). The trial court sentenced defendant to life in prison on the underlying offense plus a consecutive term of 25 years to life for the firearm enhancement in section 12022.53, subdivision (d). We affirmed this judgment in *Davidson I, supra*, B147565.

After defendant was sentenced in MA020910, Warren died. Thereafter, the district attorney filed a new information in superior court case No. MA022785 (MA022785), charging defendant with Warren's premeditated, first degree murder (§ 187, subd. (a)). This information alleged firearm enhancements within the meaning of section 12022.53, subdivisions (b), (c), and (d). A jury convicted defendant of first degree murder, finding the firearm enhancements to be true. The trial court sentenced him to 25 years to life for the murder and imposed a consecutive 25-year-to-life sentence for the firearm enhancement under section 12022.53, subdivision (d). It also dismissed defendant's attempted murder conviction in MA020910 sua sponte, stating: "On January 8, 2001, and following a jury trial and verdict of an attempt murder and a true finding as to the special allegation [section] 12022.53[, subdivision (d)], the defendant, Mr. Davidson, was sentenced to life, plus 25 years to life. The attempt murder in that case, that's MA020910, arose from the same incident with the same victim as in this case. In light of this new conviction and based on the continuing legal validity of the verdict and sentence in this matter, pursuant to *People v. Scott* [(1997)] 15 Cal.4th 1188 [65 Cal.Rptr.2d 240, 939 P.2d 354], the court will dismiss MA020910." The trial court then asked counsel if they wished to be heard. Both counsel indicated that they did not.

Defendant appealed the murder conviction. In *People v. Davidson* (May 30, 2006, B182040) (nonpub. opn.), Division One of this court reversed it. On remand, the prosecutor announced that the People were unable to proceed in a retrial of the murder case, and defendant moved to dismiss. The trial court granted the motion, and, over defense objection, reinstated the attempted murder conviction in MA020910. Defendant objected because the conviction in that case "was dismissed, and it remains so." The prosecutor argued that the dismissal was couched in conditional language, premising it on the continuing legal validity of the murder conviction. Moreover, he claimed that "jurisdictionally, the court could not dismiss that case, and that the legal effect would be to reinstate the sentence based on the fact that he has already been convicted." The trial court ordered an amended abstract to reflect the original sentencing with appropriate credit adjustments.

## DISCUSSION

Defendant contends that the trial court lacked authority to reinstate his earlier conviction of attempted murder and that doing so violated the prohibition against double jeopardy. He argues that there is no authority for a conditional dismissal of a judgment and that even if improperly dismissed, in the absence of fraud perpetrated on the trial court, it has no authority to vacate a dismissal. This contention lacks merit.

### *Reinstatement*

We begin our analysis by considering whether the dismissed attempted murder conviction in MA090210 was properly reinstated. Defendant argues that there is no authority allowing a trial court to reinstate an intentionally dismissed judgment. He relies principally on the opinion of the divided Court of Appeal in *Smith v. Superior Court* (1981) 115 Cal.App.3d 285 [171 Cal.Rptr. 387] (*Smith*).

In *Smith*, the defendant pled guilty to embezzlement of a rental car. On appeal, he argued that the car was improperly seized as the fruit of an unlawful search, with which contention the Court of Appeal agreed, holding that the fruits of the search should have been suppressed. On remand, the trial court granted the prosecutor's motion to dismiss, based on the prosecutor's representation that there were no pending appellate matters. Unbeknownst to the prosecutor, the Attorney General had filed a petition for certiorari to the United States Supreme Court. Upon learning of this, the prosecutor moved to vacate the dismissal, and the trial court granted the motion, reinstating the conviction against the defendant. The defendant then filed a petition for a writ of mandate, claiming that in vacating the dismissal, the trial court was

attempting to correct judicial rather than clerical error and that it was without authority to do so. (*Smith, supra,* 115 Cal.App.3d at pp. 287–288.)

The Court of Appeal held that "at least where no actual fraud has been perpetrated upon the court, a criminal court has no authority to vacate a dismissal entered deliberately but upon an erroneous factual basis." (*Smith, supra,* 115 Cal.App.3d at p. 287.) It reasoned that judicial error "which occurs in the rendition of orders or judgments which are the fault of judicial discretion, as opposed to clerical error or inadvertence, may not be corrected except by statutory procedure." (*Id.* at p. 289; see also *People v. McGee* (1991) 232 Cal.App.3d 620, 624 [283 Cal.Rptr. 528] ["Clerical error must be distinguished from judicial error, which cannot be corrected once final."].) An order is clearly " 'judicial' " if the trial court entered the order it intended. (*Smith, supra,* at p. 291.) " 'Generally, a clerical error is one inadvertently made, while a judicial error is one made advertently in the exercise of judgment or discretion. [Citations.]' " (*People v. McGee, supra,* at p. 624.) " 'An amendment that substantially modifies the original judgment or materially alters the rights of the parties, may not be made by the court under its authority to correct clerical error . . . .' " (*Smith, supra,* at p. 290.)

■ *Smith* is inapposite here because the reinstatement of defendant's attempted murder conviction occurred as a matter of law. When the trial court sentenced defendant on his murder conviction in MA022785, he had already suffered a conviction for attempted murder of the same victim, relating to the same incident. While generally, "a defendant 'may be convicted of any number of the offenses charged' . . ." (*People v. Medina* (2007) 41 Cal.4th 685, 688 [61 Cal.Rptr.3d 677, 161 P.3d 187] (*Medina*)), "an exception to this general rule . . . prohibits multiple convictions based on necessarily included offenses" (*ibid.*). ■ Attempted murder is a lesser included offense of murder. (*In re Sylvester C.* (2006) 137 Cal.App.4th 601, 609 [40 Cal.Rptr.3d 461] ["California appellate courts have repeatedly accepted the principle that attempt is a lesser included offense of any completed crime."].) ■ Hence, when defendant was convicted of Warren's murder, the trial court, which was obligated under section 669 to coordinate sentencing on that conviction with the extant attempted murder conviction, had no alternative but to dismiss the attempted murder conviction. In doing so, it made clear that its dismissal was "based on the continuing legal validity of the verdict and sentence in [MA022785]." ■ This accurately reflected the law that "[i]f a greater offense is reversed on appeal, the lesser included offense may be revived by operation of law." (*Medina, supra,* at p. 702.)

Defendant seeks to distinguish *Medina* and the cases upon which it relies because they deal with striking convictions of lesser included offenses tried in the same case. He argues that in each of those cases "the charges at issue that

involved a necessarily included, specifically included or lesser included offense, and were all tried together. The defendants stood convicted of the offenses in a single proceeding. Unlike appellant's case, none involved separately tried, but included offenses, where the lesser judgment and conviction had been dismissed in its entirety. None involved trials that occurred years apart. And none involved an entire judgment that had been dismissed."

■ These distinctions are without a difference where the two convictions are against the same victim, arise from the same acts of the defendant and were tried in separate proceedings only because of the fortuity that the victim languished some period of time before dying. Under section 669, when defendant was convicted of murder in MA022785, the trial court was obliged to determine whether he should be sentenced concurrently or consecutively to the attempted murder conviction. (§ 669 ["When any person is convicted of two or more crimes, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same judge or by different judges, the second or other subsequent judgment upon which sentence is ordered to be executed shall direct whether the terms of imprisonment or any of them to which he or she is sentenced shall run concurrently or consecutively."].) In doing so, the trial court was charged with coordinating the sentences, in a similar fashion to what it would have been obligated to do had the charges been tried together. With respect to the issue before us, we see no legal significance that the two convictions resulted from two separate prosecutions rather than in a single prosecution. Reinstatement by operation of law is therefore appropriate. "[S]ound judicial policy requires defendants who are fairly tried and convicted remain responsible for those crimes they were found to have committed." (*In re Gutierrez* (1997) 51 Cal.App.4th 1704, 1712 [60 Cal.Rptr.2d 332].)

### Double Jeopardy

Defendant argues that the reinstatement of the attempted murder case placed him in double jeopardy. We disagree.[3]

■ The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb . . . ." (See also Cal. Const., art. I, § 15.) Jeopardy attaches so as to invoke the principles of double jeopardy when a defendant is placed on trial on an accusatory pleading in a court of competent jurisdiction and a jury is impaneled or sworn. (*Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 601 [119 Cal.Rptr. 302, 531 P.2d 1086].) The double jeopardy clause precludes a

---

[3] Defendant concedes, as he must, that his subsequent trial on the murder charge did not subject him to double jeopardy. (*People v. Scott, supra*, 15 Cal.4th at p. 1201.)

defendant from being tried a second time on a charge for which the defendant was acquitted. It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense.[4] (*People v. Izaguirre* (2007) 42 Cal.4th 126, 133 [64 Cal.Rptr.3d 148, 164 P.3d 578].)

■ A dismissal of a case is not deemed an acquittal for double jeopardy purposes absent clear evidence that the court intended to exercise that power. (*People v. Hatch* (2000) 22 Cal.4th 260, 271 [92 Cal.Rptr.2d 80, 991 P.2d 165].) It is not deemed to be based on legal insufficiency so as to bar retrial on double jeopardy grounds unless the record clearly shows that the court applied the substantial evidence standard of review and concluded that no reasonable trier of fact could find guilt beyond a reasonable doubt. (*In re Cruz* (2003) 104 Cal.App.4th 1339, 1349 [129 Cal.Rptr.2d 31].)

Here, the trial court's statement when it dismissed the attempted murder conviction made clear that its justification for doing so had nothing to do with insufficiency of evidence. It stated that it was dismissing because of the murder conviction and that if the latter conviction were overturned on appeal, "the original case would be revived by operation of law since there was nothing on the record to show that the attempted murder conviction was invalid or in any way been reversed by the appellate court." Consequently, the dismissal was not an acquittal which would invoke the double jeopardy prohibition.

■ Furthermore, " 'no plea of double jeopardy can properly be made where the defendant is tried but once.' " (*People v. Tideman* (1962) 57 Cal.2d 574, 578 [21 Cal.Rptr. 207, 370 P.2d 1007].) When the attempted murder charge was tried, it was the first and only trial of that charge. While the murder charge was subsequently filed and tried, double jeopardy presented no bar to that prosecution as it was within an exception. (*People v. Scott, supra,* 15 Cal.4th at p. 1201.) When the murder charge was dismissed, it was not followed by a trial or retrial of the attempted murder charge. The attempted murder conviction was merely revived as a matter of law. (*Medina, supra,* 41 Cal.4th at p. 702.)

---

[4] Section 654 contains a similar statutory proscription. It provides in part: "(a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. *An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other.*" (Italics added.)

## DISPOSITION

The order appealed from is affirmed.

Boren, P. J., and Doi Todd, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 30, 2008, S161321.